UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

NIGHT BOX
FILED

DEC 27 2004

CLARENCE MADDOX
CLERK USDC / SDFL / MIA

CASE NO.

CIV - COOKE

/ McALILEY

JOSE GUEVARA,

    Plaintiff,

vs.

REPUBLIC DEL PERU;
MINISTERIO DEL INTERIOR
DEL PERU; ANTONIO KETIN
VIDAL, individually and FERNANDO
ROSPIGLIOSI, individually,

    Defendants.

_____/

(REMOVAL FROM THE CIRCUIT
COURT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA,
CASE NO.: 03-28697 CA 08)

## NOTICE OF REMOVAL

    Defendants, REPUBLICA DEL PERU and MINISTERIO DEL INTERIOR DEL PERU

(hereinafter "Defendants"), by and through their undersigned counsel, and pursuant to 28 U.S.C.

§§ 1441 and 1446 and Fed. R. Civ. Pro. 11, hereby file their Notice of Removal of this action

from the Circuit Court in and for Miami-Dade County, Florida, in which it is now pending, to the

District Court of the United States for the Southern District of Florida, and in support of this

Notice states:

    1.    Plaintiff, JOSE GUEVARA, filed this action in the Circuit Court in and for

Miami-Dade County, Florida, Case No. 03-28697 CA 08, on December 10, 2003.

    2.    Copies of the Complaint and Process were served upon the Defendants through

their registered agent on October 29, 2004.  A copy of the Complaint is attached hereto as

Exhibit "A".

ORL:16789:1



3.      This is a civil action over which this Court has original jurisdiction as this is an action against a Foreign State, pursuant to 28 U.S.C. § 1330.  Specifically, the Defendants are a Foreign State as defined in 28 U.S.C. § 1603(a).

4.      Any civil action brought in a State Court against a Foreign State as defined in Section 1603(a) may be removed by the foreign state to the District Court of the United States for the District Court and division embracing the place where such action is pending. 28 U.S.C. § 1441(d).

5.      The United States Code provides that "a "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)." 28 U.S.C. § 1603(a).  Neither section 1603, nor section 1608 further defines either term.  However, in *Transaero, Inc. v. La Fuerze Aerea Boliviana*, 30 F.3d 148 (D.C. Cir. 1994), the court found that a defendant is a foreign state if its core functions are predominantly governmental, rather than commercial. *Transaero, Inc.*, 30 F.3d at 151.  There can, therefore, be no dispute that the Republic of Peru is a foreign state within the meaning of section 1441(d) and that removal pursuant to section 1441(d) would be proper.

6.      Pursuant to 28 U.S.C. § 1441(a), removal of this action to the Southern District of Florida, Miami Division, is appropriate as this action was brought in the Circuit Court in and for Miami-Dade County, Florida.  No other process, pleadings, or orders have been served upon the Defendant in this action other than the Summons, Complaint, and Motions for Enlargement of Time filed by the Plaintiff in which to serve the Defendants.

ORL:16789:1

7.     Promptly after the filing of this Notice of Removal, the Defendants will file a copy of this Notice with the Clerk of the Circuit Court in and for Miami-Dade County, Florida, as required by law and shall give written notice thereof to all adverse parties.

WHEREFORE, Defendant, REPUBLICA DEL PERU and MINISTERIO DEL INTERIOR DEL PERU, respectfully request that this action be removed from the Circuit Court in and for Miami-Dade County, Florida to this Court.

Respectfully submitted this 27th day of December, 2004.

William F. Sutton, Jr., Esq.
Florida Bar No. 701238
**Ruden, McClosky, Smith, Schuster
& Russell, P.A.**
111 North Orange Avenue, Suite 1750
Orlando, FL 32801
PH: 407-244-8000
FAX: 407-244-8103
Attorney for Defendants,
REPUBLICA DEL PERU and
MINISTERIO DEL INTERIOR DEL PERU

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

U. S. First-Class Mail to: Arturo Martinez, Esquire, 100 Southeast 2nd Street, Suite 3400,

Miami, FL 33131, this 27th day of December, 2004.

William F. Sutton, Jr., Esq.

ORL:16789:1

- 4 -

IN THE CIRCUIT COURT FOR THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

JOSE GUEVARA,

    Plaintiff,

vs.

REPUBLICA DEL PERU;
MINISTERIO DEL INTERIOR
DEL PERU; ANTONIO KETIN
VIDAL, individually and FERNANDO
ROSPIGLIOSI, individually,

    Defendants.

_____/

CASE NO.:

03  28697  CA 08

215
I≥50
RCP 78472

## COMPLAINT

    Jose Guevara, by and through the undersigned counsel, sues Republica del Peru; Ministerio del Interior del Peru; and, Antonio Ketin Vidal and Fernando Rospigliosi, in their individual capacities, and states:

## NATURE OF THE ACTION

    1. This action stems from the international manhunt of former Peruvian spy chief, Vladimiro Montesinos ("**Montesinos**"), the most wanted fugitive in the western hemisphere during times relevant herein. Peru, while in pursuit of Montesinos, deliberately availed itself of the resources of U.S. judicial authority in Miami, Florida to offer Guevara a five-million-dollar ($5,000,000.00) reward and obtain in return information enabling the location and capture of Montesinos. After Guevara provided said information, however, Peru failed to perform its end of the bargain and, to this day, has ignored Guevara's repeated requests for the reward.



EXHIBIT
A

## JURISDICTION, VENUE AND PARTIES

2. This is an action for damages in excess of $15,000.00, excluding interest, costs and attorney's fees. The causes of action alleged herein accrued within the jurisdiction of this Court and, as more fully set forth below, this Court has jurisdiction to entertain the claims asserted herein.

3. Jose Guevara ("**Guevara**") is an individual who is *sui juris*.

4. Republica del Peru [Republic of Peru] ("**Peru**") has the capacity to sue and be sued. During times relevant herein Peru acted through, *inter alia*, Ministerio del Interior del Peru ("**Mininter**").

5. Mininter is the Peruvian equivalent to the United States Department of Homeland Security and has the capacity to sue and be sued. During times relevant herein Mininter acted through, *inter alia*, the Ministro del Interior del Peru [Secretary of Homeland Security of Peru], the Comision Especial de Alto Nivel del Ministerio del Interior del Peru [Special High Level Committee of the Department of Homeland Security of Peru] ("**Special Committee**") and members of the Special Committee.

6. Antonio Ketin Vidal ("**Ketin Vidal**") is an individual who is *sui juris*. During times relevant herein Ketin Vidal served as Ministro del Interior del Peru [Secretary of Homeland Security of Peru], Teniente General de la Policia Nacional del Peru [Lieutenant General of the National Police of Peru] and head of the Special Committee. Unless otherwise indicated, Ketin Vidal acted in his official capacity and within the scope of his authority to bind Peru and Mininter.

7. Fernando Rospigliosi ("**Rospigliosi**") is an individual who is *sui juris*. During times relevant herein Rospigliosi served as Ministro del Interior del Peru [Secretary of

2

Homeland Security of Peru] and head of the Special Committee.   Unless otherwise indicated, Rospigliosi acted in his official capacity and within the scope of his authority to bind Peru and Mininter.

## GENERAL ALLEGATIONS (THE REWARD)

8. Montesinos served as presidential adviser and head figure of the National Intelligence System of Peru during the 1990s.   During that time, according to Peruvian authorities, Montesinos organized an impressive net of corruption covering a wide spectrum of illicit activities, including arms trafficking, drug dealing, money laundering, extortion and even murder.

9. According to a Peruvian Parliamentary Committee, the profits of Montesinos's illicit activities grew to approximately one billion dollars ($1,000,000,000.00), which were dispersed throughout the world in accounts controlled by Montesinos.

10. On or about late October 2000, Montesinos went into hiding after a public corruption scandal rocked Peru's government and Montesinos's detention became imminent.

11. In November 2000 Peru appointed Jose Ugaz ("**Ugaz**") as special prosecutor in charge of Peru's legal proceedings against Montesinos.   Ugaz disclosed the issuance of national and international arrest warrants against Montesinos.   Meanwhile, Ketin Vidal met with representatives of international police agencies to coordinate the search, location and capture of Montesinos.

12. Montesinos's trail eventually grew cold.   Accordingly, in April 2001 Peru enacted the Emergency Decree N° 049-2001 ("**Decree**"), which established a five-

million-dollar ($5,000,000.00) reward ("**Reward**") for "Accurate Information" enabling the location and capture of Montesinos. *See* **Exhibit "A"**, the Decree.

13. The Decree defined Accurate Information as "that provided through any means to the Special High Level Committee and which enables locating and capturing Vladimiro Lenin Montesinos Torres, who is wanted."

14. Further, the Decree mandated that "[Mininter] shall pay the Financial Reward 24 hours after the actual location and capture of [Montesinos]." The Special Committee, which was established, *inter* alia, to determine the granting of the Reward, was headed during times relevant herein by Ketin Vidal or Rospigliosi.

15. On or about December 15, 2000, Guevara was introduced to Montesinos in Venezuela. At the time, Montesinos needed a safe house; that safe house was arranged by Guevara, who thereafter became in charge of Montesinos's security.

16. Accordingly, Guevara was the only individual that: (1) could locate and access Montesinos on a confidential basis twenty-four hours a day; and, more importantly, (2) could arrange the capture of Montesinos.

17. In June 2001 Guevara traveled to Miami, Florida to attend a meeting as a straw man for Montesinos. Said meeting, Guevara later learned, was being monitored by agents of the United States Federal Bureau of Investigations ("**F.B.I.**").

18. Guevara was arrested by F.B.I. agents, who relayed on behalf of Peru, that the Reward would be given to Guevara if he provided information enabling Montesinos's location and capture. The F.B.I. agents also indicated that on its part, the United States was pursuing a criminal case against Guevara but the same would be dismissed if he

accepted Peru's offer of reward, contacted Montesinos via telephone and arranged for his capture pursuant to instructions provided by the F.B.I.

19. Pursuant to U.S. judicial authority in Miami, Florida, Guevara was:

(1) Arrested;

(2) By order of a United States Magistrate Judge, maintained in custody without bond at the Federal Detention Center in Miami, Florida;

(3) Charged in the U.S. District Court for the Southern District of Florida with violations of 18 U.S.C. §§ 875(b), 371 and 2;

(4) Informed by an Assistant U.S. Attorney, as officer of the Court, that all charges would be dismissed after acceptance of Peru's offer of reward, direct contact with Montesinos, via telephone, and the relay of capture instructions provided by the F.B.I.

20. In order to procure Guevara's acceptance of the offer of reward, Peru deliberately sought, obtained, and benefited from the resources of U.S. judicial authority in Miami, Florida. More specifically, upon being informed of Guevara's detention and his knowledge of Montesinos's whereabouts, Peru deliberately availed itself of the credence, weight, influence and pressure exerted by U.S. courts and its officials in Miami, Florida to offer Guevara the Reward and obtain in return information enabling the location and capture of Montesinos. Said offer was made by Peru with full knowledge that Guevara remained in custody pursuant to U.S. judicial authority and that the credence, weight, influence and pressure exerted by said authority would likely result in an acceptance of the offer.

5

21. Special F.B.I. Agent Waldo Longa ("**Longa**") confirmed Peru's offer of reward, reiterated by Ketin Vidal in a conversation with Longa, to award the Reward to Guevara in Miami, Florida.

22. Accordingly, while in custody in Miami, Florida pursuant to U.S. judicial authority, Guevara accepted Peru's offer of reward by providing, not only information, but also assistance that enabled Montesinos's location and capture. More specifically, with knowledge of Peru's offer of reward and with intent to claim the same, Guevara disclosed Montesinos's hiding place and telephone number, contacted Montesinos via telephone and, while F.B.I. agents monitored the conversations, arranged for Montesinos's capture pursuant to F.B.I. instructions.

23. Peru contemplated the involvement and assistance of U.S. judicial authority in Miami, Florida and deliberately implicated the same to obtain Guevara's acceptance of its offer of reward.

24. In July 2001 Ketin Vidal traveled to Miami, Florida and requested a meeting with Guevara. Said meeting took place on July 10, 2001 at the F.B.I.'s Field Division Office in North Miami Beach, Florida. During the meeting, which was attended by the former Consul General of Peru in Miami, Alfredo Ferreiro, as well as Longa, Ketin Vidal thanked Guevara on behalf of Peru for providing the information and assistance that enabled the location and capture of Montesinos. In addition, Ketin Vidal reaffirmed Peru's commitment to pay Guevara the Reward in Miami, Florida.

25. In light of Guevara's acceptance of Peru's offer of reward and his assistance to the F.B.I., the United States dismissed all charges against Guevara, who was released under the supervision of the F.B.I. Thereafter, the United States' ambassador in Lima,

John Hamilton, as well as F.B.I. agents assisting Peru on the Montesinos case, were in contact with Peru and confirmed: (1) Guevara's claim to the Reward; and, (2) the legitimacy of said claim (based on Peru's offer of reward made to Guevara while in custody in Miami, Florida, and Guevara's acceptance of said offer, which was obtained with the assistance and involvement of U.S. judicial authority).

26. On or about February 2002, Guevara, through counsel, contacted Mininter because the reward had not been paid as promised. At the time, Mininter was headed by Rospigliosi, Ministro del Interior del Peru [Secretary of Homeland Security of Peru], and Gino Costa ("**Costa**"), Viceministro del Interior del Peru [Undersecretary of Homeland Security of Peru] (both leading members of the Special Committee).

27. Guevara's counsel met with Costa in Peru, who reaffirmed Peru's commitment to satisfy the reward offered by Peru to Guevara in Miami, Florida.

28. Also in February 2002, Peruvian Judge, Magali Bascones, and Ugaz, traveled to the United States to depose Guevara in Miami, Florida. Rospigliosi caused a message to be delivered to Guevara by both Bascones and Ugaz. In his message (intended to secure Guevara's cooperation), Rospigliosi promised that the Reward would be paid to Guevara. Relying on Rospigliosi's promise, Guevara cooperated with Peruvian authorities and provided sensitive information acquired by Guevara while in charge of Montesinos's security.

29. Guevara's entitlement to the Reward was acknowledged by the Special Committee in an August 5, 2002 Resolution ("**Resolution**"), attached hereto as **Exhibit "B"**, which acknowledges that:

> On June 23, 2001 Venezuelan national Jose Guevara provided information leading to the location and capture of Vladimiro Lenin Montesinos Torres

to the Chair of the Special High Level Committee of the Department of Homeland Security at the time, PNP Lieutenant General Antonio Ketin Vidal Herrera for the purpose of receiving the financial reward stipulated in Emergency Decree No. 049-2001.

30. A certified copy of the Resolution was delivered to Guevara through the Consulate General of Peru in Miami, Florida on or about February 2003. The Resolution was duly executed by Costa, who in August 2002 served as Ministro del Interior del Peru [Secretary of Homeland Security of Peru].

31. Guevara, through counsel, has repeatedly contacted Peru in an effort to resolve this matter to no avail.

32. All conditions precedent to the institution of this action have occurred, have been satisfied, or have otherwise been waived.

## COUNT I - BREACH OF CONTRACT (PERU)

33. Guevara incorporates the allegations contained in paragraphs 1 through 32 as if fully stated herein.

34. Peru established the Reward for information enabling the location and capture of Montesinos.

35. Peru deliberately availed itself of the resources of U.S. judicial authority in Miami, Florida to offer Guevara the Reward and obtain Guevara's acceptance to said offer.

36. By providing information enabling Montesinos's location and capture, Guevara accepted Peru's offer of reward.

37. Accordingly, Guevara and Peru entered into a contract in Miami, Florida.

38. Guevara fully performed his end of the contract and is entitled to the Reward that was promised to him by Peru.

39. Peru has breached its contract with Guevara by failing to pay the Reward as promised. As a result, Guevara has been damaged.

**WHEREFORE**, Guevara demands a judgment for damages (including litigation costs and pre-judgment interest) against Peru and any other relief deemed just and proper.

## COUNT II – BREACH OF CONTRACT IMPLIED IN LAW (PERU)

40. Guevara incorporates the allegations contained in paragraphs 1 through 32 as if fully stated herein.

41. Peru established the Reward for information enabling the location and capture of Montesinos.

42. Peru deliberately availed itself of the resources of U.S. judicial authority in Miami, Florida to offer Guevara the Reward and obtain Guevara's acceptance to said offer.

43. In reliance of Peru's offer of reward, Guevara provided information enabling Montesinos's location and capture.

44. Guevara conferred a substantial benefit on Peru. As a result of Guevara's information and assistance, *inter alia*:

(1)     Peru apprehended Montesinos, the most infamous criminal in Peru's history;

(2)     Montesinos was captured alive, resulting in his interrogation and the unraveling of a corruption network reaching the highest levels of Peruvian society; and,

(3)     Peru recovered millions of dollars concealed by Montesinos in financial institutions throughout the world.

45. Peru has acknowledged the benefit conferred by Guevara, which was voluntarily accepted and retained by Peru.

46. Accordingly, it would be inequitable for Peru not to remunerate Guevara in turn.

**WHEREFORE**, Guevara demands a judgment for damages (including litigation costs and pre-judgment interest) against Peru and any other relief deemed just and proper.

## COUNT III - BREACH OF CONTRACT (MININTER)

47. Guevara incorporates the allegations contained in paragraphs 1 through 32 as if fully stated herein.

48. Mininter created and administered a web page for worldwide dissemination of the offer of reward. See **Exhibit "C"**, attached hereto.

49. In said web page Mininter offered and promised that:

THE SUPREME GOVERNMENT HAS PROMULGATED THE EMERGENT OFFICIAL ORDER N° 049-2001 IN WHICH IT ESTABLISH (SIC) *THE ECONOMIC REWARD FOR TRUE INFORMATION THAT LETS THE LOCATION AND CAPTURE OF VLADIMIRO MONTESINOS*.

A HIGH LEVEL COMISSION (SIC) WILL BE FORMED *TO EVALUATE THE INFORMATION GOTTEN* AND *GIVE THE REWWARD* (SIC).

\*\*\*

THE REWARD . . . WILL BE NATIONAL *OR INTERNATIONAL*.

(Emphasis added).

50. Thus, Mininter bound itself to: (1) review and consider claims for the five-million-dollar ($5,000,000.00) reward established by the Decree; (2) satisfy the reward accordingly; and, (3) resolve any disputes arising therefrom anywhere in the world.

51. After being made aware of the Reward offered by and through Mininter, Guevara provided information to Mininter in Miami, Florida making possible

10

Montesinos's location and capture.   Accordingly, Guevara and Mininter entered into a

contract in Miami, Florida.

52. Mininter promised to pay the Reward to Guevara in Miami, Florida.

53. Mininter issued a resolution acknowledging that:

Jose Guevara provided information leading to the location and capture of
Vladimiro Lenin Montesinos Torres to the Chair of the Special High Level
Committee of the Department of National Security at the time, PNP
Lieutenant General Antonio Ketin Vidal Herrera for the purpose of
receiving the financial reward stipulated in Emergency Decree No. 049-
2001.

See Ex. "B".

54. Further, Mininter enlisted the Consulate General of Peru in Miami, Florida to

deliver said Resolution to Guevara.

55. Thus, Mininter has consented to resolve any disputes arising from Guevara's

demand for the Reward in Miami, Florida.

56. Mininter has not paid the Reward as promised to Guevara in Miami, Florida.

Thus, Mininter has breached its contract with Guevara and as a result Guevara has been

damaged.

**WHEREFORE**, Guevara demands a judgment for damages (including litigation

costs and pre-judgment interest) against Mininter and any other relief deemed just and

proper.

## COUNT IV - FRAUDULENT INDUCMENT (KETIN VIDAL)

57. Guevara incorporates the allegations contained in paragraphs 2,3,6[1],8-17,29

and 32 as if fully stated herein.

---

[1] Excepting the third sentence of paragraph 6.

58. Ketin Vidal acted and represented himself as an individual with the authority to bind Peru, through Mininter and the Special Committee, to pay Guevara the Reward. In fact, Ketin Vidal did not have such authority.

59. Ketin Vidal, acting and representing himself as an individual with the authority to bind Peru, offered the Reward to Guevara in Miami, Florida. Ketin Vidal did so intentionally to induce Guevara to act upon the offer and thus, obtain information enabling the location and capture of Montesinos.

60. More specifically, after Guevara was arrested in Miami, Florida, Ketin Vidal communicated to Guevara that the Reward would be given to Guevara if he provided information enabling Montesinos's location and capture.

61. Thereafter, Ketin Vidal traveled to Miami, Florida and requested a meeting with Guevara. Said meeting took place at the F.B.I.'s Field Division Office in North Miami Beach, Florida. During the meeting Ketin Vidal acknowledged that Guevara provided, not only the information, but assistance that enabled the location and capture of Montesinos. In addition, purporting to act on behalf of Peru, Ketin Vidal reaffirmed that the Reward would be paid to Guevara in Miami, Florida.

62. Ketin Vidal knew or should have known that he was acting beyond the scope of his authority when he offered the Reward to Guevara in Miami, Florida. Nevertheless, Ketin Vidal did so intentionally, wrongfully, and with reckless disregard for Guevara's rights in order to secure, *inter alia*, substantial financial gains, professional advancement and personal glory.

63. Guevara relied on Ketin Vidal's representations and as a result has been damaged.

**WHEREFORE**, Guevara demands a judgment for damages (including litigation costs) against Ketin Vidal and any other relief deemed just and proper.

## COUNT IV - FRAUDULENT MISREPRESENTATION (ROSPIGLIOSI)

64. Guevara incorporates the allegations contained in paragraphs 2,3,7[2],8-17,26-29 and 32 as if fully stated herein.

65. Rospigliosi acted and represented himself as an individual with the authority to bind Peru, through Mininter and the Special Committee, to pay Guevara the Reward. In fact, Rospigliosi did not have such authority.

66. Rospigliosi, acting and representing himself as an individual with the authority to bind Peru, promised Guevara in Miami, Florida that the Reward would indeed be paid To Guevara. Rospigliosi did so intentionally to induce Guevara to act upon the promise.

67. Relying on Rospigliosi's promise, Guevara cooperated with Peruvian authorities and provided sensitive information acquired by Guevara while in charge of Montesinos's security.

68. Rospigliosi knew or should have known that he was acting beyond the scope of his authority when he promised in Miami, Florida that the Reward would be paid to Guevara. Nevertheless, Rospigliosi did so intentionally, wrongfully and with reckless disregard for Guevara's rights.

69. Rospigliosi acted to secure, *inter alia*, Guevara's cooperation, substantial financial gains, professional advancement and personal glory.

70. Guevara relied on Rospigliosi's representations and as a result has been damaged.

---

[2] Excepting the third sentence of paragraph 7.

**WHEREFORE**, Guevara demands a judgment for damages (including litigation costs) against Rospigliosi and any other relief deemed just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fla. R. Civ. P. 1.430, Plaintiff demands a jury trial of all issues in this cause triable by a jury.

Respectfully submitted this **10** day of December 2003.

> LAW OFFICES OF MICHAEL DIAZ, JR.
> 100 Southeast 2nd Street, Suite 3400
> Miami, Florida 33131
> Phone: (305) 375-9220
> Telefax: (305) 375-8050
>
> By: _____
> Michael Diaz, Jr.
> Florida Bar No. 606774

14



**El Peruano** DIARIO OFIC

## STATUTE LAWS

Editor: Manuel Jesús Orbegozo                                      http://www.editoraperu.com.pe

**"Year commemorating the 150th anniversary of Universidad Nacional Mayor de San Martín"**

Lima, Sunday, April 22, 2001          YEAR XIX   No. 7608                    Page 201727

# EMERGENCY DECREES

### EMERGENCY DECREE No. 049-2001

### ESTABLISHING A FINANCIAL REWARD IN EXCHANGE FOR ACCURATE INFORMATION LEADING TO THE LOCATION AND CAPTURE OF VLADIMIRO MONTESINOS TORRES

### THE PRESIDENT OF THE REPUBLIC

### WHEREAS:

The authorities of the Peruvian Judiciary, the Office of the Prosecutor General and the National Police are concentrating working on prosecuting several criminal acts committed by various officials between 1990 and 2000;

Vladimiro Montesinos Torres stands out among said officials, who, during the aforementioned period held the position of Advisor in the National Intelligence System.

The aforesaid person was involved in serious crimes which affect the security of the State and society overall, in accordance with the evidence which has been obtained in special proceedings and judicial inquiries which are being conducted pursuant to Laws Nos. 27378, 27379 and 27380 on organized crime;

Therefore, a warrant for his arrest has been issued by several Courts as the alleged perpetrator of crimes against government administration, public corruption, embezzlement, crimes against persons, aggravated murder, drug trafficking, national security and others;

There is a need to adopt exceptional economic and financial measures to grant a financial reward to the person or persons who provide(s) accurate information which will enable locating and capturing Vladimiro Lenin Montesinos Torres, in accordance with the procedure set forth in this Emergency Decree;

Said measures will contribute to deciding the criminal acts under investigation, by virtue whereof there are matters of national security which justify its immediate issuance;

Exercising the authority vested under Article 118 paragraph 19) of the Peruvian Political Constitution: As approved by the Cabinet by way of a vote; and required to report to the Congress of the Republic;

DECREES:

### Article 1-Financial Reward

Establish a financial reward in the amount US $5,000,000.00 (FIVE MILLION 00/100 UNITED STATES DOLLARS), which shall be given to the person or persons who provide(s) accurate information that will directly enable locating and capturing Vladimiro Lenin Montesinos Torres. In the event several persons provide the said information, the financial reward shall be divided among them.

### Article 2-Special High Level Committee

Establish a Special High Level Committee in the Ministry of the Interior *[Department of Homeland Security]* for the purpose of evaluating information received and deciding on granting the financial reward. The Special High Level Committee shall consist of:

– the Secretary of Homeland Security, who will preside
– the Undersecretary of Homeland Security
– the Director General of the National Police
– the Director General of Intelligence of the Department of Homeland Security

### Article 3- Accurate Information

For purposes of this Emergency Decree, accurate information shall be that [information] provided through any means to the Special High Level Committee and which enables locating and capturing Vladimiro Lenin Montesinos Torres, who is wanted.

### Article 4- Use of a Pseudonym

The informant or informants may use a pseudonym, in which case the Special High Level Committee shall provide a secret code for subsequent identification upon receipt of the information in order to grant the Financial Reward.

### Article 5-Protection and Safety Measures

The Special High Level Committee, in keeping with the degree of risk or danger, shall adopt the following measures for the protection and safety of the informant:

a) Police protection for the informant and his family, which may include a change of residence;

b) Withhold his identity and other personal information during proceedings.



**PLAINTIFF'S EXHIBIT**

B

### Article 6- Secret Information

All information involving application of this Emergency Decree is secret. Any person who violates this provision, shall be administratively, civilly or criminally liable, as the case may be, in accordance with current law.

### Article 7- Scope of the Financial Reward

The Department of Homeland Security shall pay the Financial Reward 24 hours after the actual location and capture of Vladimiro Lenin Montesinos Torres. Said reward, as well as the measures for safety and protection, shall apply to nationals and foreigners.

### Article 8-Government Loan

The Department of the Economy and Finance is hereby authorized to obtain a Government Loan with Banco de la Nación for up to US $5,000,000.00 (FIVE MILLION 00/100 UNITED STAT ES DOLLARS), earmarked for financing the issuance of the Financial Reward which is the object of the Emergency Decree; said funds shall be deposited in an account defined by the General Directorate of the Treasury for channeling to the Department of Homeland Security in the same currency as the pertinent disbursement is made.

The government loan shall be paid over a period of four (4) years, which includes a one-year (1) grace period and an option for early payment, in consecutive semi-annual installments, and if possible, in equal amounts, accruing interest at the LIBOR rate plus 3%.

### Article 9- Servicing the debt

Services for pay off, interest and other expenses relating to this Government Loan shall be handled by the Department of the Economy and Finance, debited from funds provided therefore in accordance with inter-sectoral priorities and goals of the Sector in each fiscal year budget for Public Debt servicing.

### Article 10- Exercise of the early payment option and charged to recoveries

The first funds recovered from the criminal acts object of this investigation, as set forth in the whereas clauses of this Emergency Decree, shall be earmarked for early pay off of the debt incurred in the Government Loan authorized in Article 8, until paid in full, in exercise of the stipulated early payment option.

### Article 11- Authorization to sign

The Secretary of the Economy and Finance or his appointee are hereby empowered to sign the loan contract, and the Director General of National Debt is also empowered to sign the other government loan documents authorized in the foregoing article.

### Article 12- Schedule and payment

The National Government Budget Administration and the Public Treasury General Directorate shall schedule and draw, respectively, payable to the Department of Homeland Security section, up to the equivalent in legal tender of the amount indicated in this Emergency Decree, charged to the Supplementary Loan that shall be approved by the pertinent law and/or to the budgetary modifications on closing of Fiscal Year 2001, as stipulated in Law No. 27209, on Management of the National Budget.

### Article 13-Approval

This Emergency Decree shall be approved by the Cabinet and the Secretaries of the Economy and Finance and Homeland Security.

Issued at the Government House in Lima on the sixteenth of April two thousand one.

VALENTIN PANIAGUA CORAZAO
Constitutional President of the Republic

JAVIER PÉREZ DE CUÉLLAR
Cabinet Council President

JAVIER SILVA RUETE
Secretary, Economy and Finance

ANTONIO KETIN VIDAL HERRERA
Secretary of Homeland Security

22266.

[Translator's note:] In the U.S., the Department of Homeland Security is equivalent to the Ministry of the Interior of the Republic of Peru.

# CERTIFICATE OF ACCURACY

I, **Esther Cecilia Crespo**, an interpreter certified by the Administrative Office of the United

States Courts, for and on behalf of **Liaison Services, Inc.**, hereby certify that the foregoing

translation, attached hereto and consisting of _2_ page(s), is a true and accurate translation

of the original document.

_Esther Crespo_

Esther Cecilia Crespo
U.S. Court Interpreter • Translator



DIARIO OFICIAL

# El Peruano

FUNDADO EN 1825 POR EL LIBERTADOR SIMÓN BOLÍVAR

# NORMAS LEGALES

Director: Manuel Jesús Orbegozo     http://www.editoraperu.com.pe

"AÑO DE LA CONMEMORACIÓN DE LOS 450 AÑOS DE LA UNIVERSIDAD NACIONAL MAYOR DE SAN MARCOS"

Lima, domingo 22 de abril de 2001    AÑO XIX - Nº 7608    Pág. 201727

## DECRETOS DE URGENCIA

### DECRETO DE URGENCIA Nº 049-2001

### ESTABLECE COMPENSACIÓN ECONÓMICA A CAMBIO DE INFORMACIÓN VERAZ QUE PERMITA LA UBICACIÓN Y CAPTURA DE VLADIMIRO MONTESINOS TORRES

EL PRESIDENTE DE LA REPÚBLICA

CONSIDERANDO:

Que, las autoridades del Poder Judicial, el Ministerio Público y la Policía Nacional del Perú, se encuentran abocadas al esclarecimiento de los diversos ilícitos penales en que habrían incurrido diferentes funcionarios entre los años 1990 y 2000;

Que, entre dichos funcionarios destaca la persona de Vladimiro Lenin Montesinos Torres, que en el período establecido ejerció el cargo de Asesor en el Sistema de Inteligencia Nacional;

Que, la persona antes indicada estaría incursa en graves delitos que afectan la seguridad del Estado y a la sociedad en su conjunto, conforme a las evidencias que se vienen obteniendo en los procedimientos especiales e investigaciones judiciales que se llevan a cabo en aplicación de las Leyes Nºs. 27378, 27379 y 27380 relativos a la criminalidad organizada;

Que, por tal motivo se encuentra requisitoriado por diferentes Juzgados, por ser presunto autor de delitos contra la Administración Pública, Corrupción de Funcionarios, Peculado, Contra la Vida, el Cuerpo y la Salud, Homicidio Calificado, Homicidio Agravado, Tráfico Ilícito de Drogas, Contra la Seguridad y otros;

Que, resulta necesario adoptar medidas excepcionales en materia económica y financiera para el otorgamiento de una compensación económica a favor de la persona o personas que proporcionen información veraz que permita la ubicación y captura de Vladimiro Lenin Montesinos Torres, de conformidad con el procedimiento que el presente Decreto de Urgencia establece;

Que, dichas medidas contribuirán con el esclarecimiento de los ilícitos penales que se encuentran en investigación en virtud de lo cual existen razones de interés nacional que justifican su expedición en forma inmediata;

En uso de las facultades conferidas en el inciso 19) del Artículo 118º de la Constitución Política del Perú;

Con el voto aprobatorio del Consejo de Ministros; y,

Con cargo de dar cuenta al Congreso de la República;

DECRETA:

**Artículo 1º.- Compensación Económica**
Establézcase una Compensación Económica ascendente a la suma de US$ 5'000,000.00 (CINCO MILLONES Y 00/100 DÓLARES AMERICANOS), que será otorgada a la persona que proporcione información veraz que permita en forma directa la ubicación y captura de Vladimiro Lenin Montesinos Torres. Tratándose de varias personas que

proporcionen dicha información, la compensación económica será distribuida entre éstas.

**Artículo 2º.- Comisión Especial de Alto Nivel**
Constitúyase en el Ministerio del Interior una Comisión Especial de Alto Nivel con la finalidad de evaluar la información recibida y decidir el otorgamiento de la Compensación Económica. La Comisión Especial de Alto Nivel estará conformada por:

- Ministro del Interior, quien la presidirá
- Viceministro del Interior
- Director General de la Policía Nacional
- Director General de Inteligencia del Ministerio del Interior

**Artículo 3º.- Información Veraz**
Para los efectos del presente Decreto de Urgencia se considera información veraz la que se proporcione por cualquier medio a la Comisión Especial de Alto Nivel, y que posibilite la ubicación y captura del requisitoriado Vladimiro Lenin Montesinos Torres.

**Artículo 4º.- Uso de Seudónimo**
El informante o los informantes podrán usar un seudónimo, en cuyo caso la Comisión Especial de Alto Nivel a la recepción de la información le asignará un código secreto que permita su posterior identificación para efecto del otorgamiento de la Compensación Económica.

**Artículo 5º.- Medidas de Protección y Seguridad**
La Comisión Especial de Alto Nivel, según el grado de riesgo o peligro, adoptará las siguientes medidas de protección y seguridad del informante:

a) Protección policial para el informante y su familia, que puede incluir el cambio de residencia.
b) Reserva de su identidad y demás datos personales en las diligencias que se practiquen.

**Artículo 6º.- Información de Carácter Secreto**
Toda información relacionada con la aplicación del presente Decreto de Urgencia tiene el carácter de secreto. Los que infrinjan esta disposición, incurren en responsabilidad administrativa, civil y/o penal, según corresponda, de conformidad con lo establecido en la legislación vigente.

**Artículo 7º.- Alcance de la Compensación Económica**
El Ministerio del Interior hará efectiva la Compensación Económica a las 24 horas de producida la ubicación y captura de Vladimiro Lenin Montesinos Torres. Dicha compensación así como las medidas de protección y seguridad, alcanzan a nacionales y extranjeros.

**Artículo 8º.- Operación de Endeudamiento Interno**
Autorízase al Ministerio de Economía y Finanzas a concertar una Operación de Endeudamiento Interno con el Banco de la Nación hasta por la suma de US$ 5'000.000,00 (CINCO MILLONES Y 00/100 DÓLARES AMERICANOS), destinada a financiar el otorgamiento de la Compensación Económica a que se refiere el presente Decreto de Urgencia; dichos recursos serán depositados en una cuenta que para el efecto determine la Dirección General del Tesoro Público para su canalización a favor del Ministerio del Interior en la misma moneda en que se efectúe el desembolso correspondiente.

La operación de Endeudamiento Interno será cancelada en un plazo de cuatro (4) años, que incluye un (1) año de gracia, mediante cuotas semestrales consecutivas y en lo posible iguales, devengando una tasa de interés anual de Libor más un margen adicional de 3%, con opción de prepago.

**Artículo 9º.- Servicio de la Deuda**
El servicio de amortización, intereses y demás gastos que ocasione la presente operación de Endeudamiento Interno

serán atendidos por el Ministerio de Economía y Finanzas, con cargo a los recursos que en función de las prioridades intersectoriales y metas del Sector le correspondan en cada Ejercicio Presupuestal para el servicio de la Deuda Pública

**Artículo 10°.- Ejercicio de la opción de prepago con cargo a recuperaciones**

Las primeras recuperaciones de los recursos provenientes de los ilícitos penales materia de investigación señalados en la parte considerativa del presente Decreto de Urgencia serán destinadas a prepagar la deuda derivada de la operación de Endeudamiento Interno que autoriza el Artículo 8° hasta su cancelación total, en ejercicio de la opción de prepago establecida.

**Artículo 11°.- Autorización de Suscripción**

Autorízase al Ministro de Economía y Finanzas o a quien él designe, a suscribir el contrato de préstamo, así como al Director General de Crédito Público a suscribir los demás documentos de la operación de Endeudamiento Interno que se autoriza en el artículo precedente.

**Artículo 12°.- Calendarización y pago**

La Dirección Nacional del Presupuesto Público y la Dirección General del Tesoro Público calendarizarán y girarán, respectivamente, a favor del Pliego Ministerio del Interior, hasta por el equivalente en moneda nacional del monto a que se refiere el presente Decreto de Urgencia, con cargo al Crédito Suplementario que se apruebe por la norma legal pertinente y/o con cargo a las modificaciones presupuestarias al cierre del Año Fiscal 2001, dentro del marco de lo establecido en la Ley N° 27209, Ley de Gestión Presupuestaria del Estado.

**Artículo 13°.- Refrendo**

El presente Decreto de Urgencia será refrendado por el Presidente del Consejo de Ministros y por los Ministros de Economía y Finanzas y del Interior.

Dado en la Casa de Gobierno, en Lima, a los dieciséis días del mes de abril del año dos mil uno.

VALENTIN PANIAGUA CORAZAO
Presidente Constitucional de la República

JAVIER PÉREZ DE CUÉLLAR
Presidente del Consejo de Ministros

JAVIER SILVA RUETE
Ministro de Economía y Finanzas

ANTONIO KETIN VIDAL HERRERA
Ministro del Interior

22266

---

**DECRETO DE URGENCIA
N° 050-2001**

**SE AMPLÍAN LOS ALCANCES DEL
DECRETO DE URGENCIA N° 077-2000**

EL PRESIDENTE DE LA REPÚBLICA

CONSIDERANDO:

Que mediante el Decreto de Urgencia N° 077-2000 se dispuso que la transferencia a terceros de las carteras de crédito de entidades del Sector Público encargadas a la Comisión Administradora de Carteras - CAC, estará a cargo de un Comité Especial de Privatización, el mismo que se constituyó mediante Resolución Suprema N° 436-2000-PCM;

Que, es necesario extender este tratamiento a otras carteras de crédito, permitiendo optimizar su gestión y recuperación;

Que, por tratarse de una medida de materia económica y financiera que permitirá un manejo eficiente de las finanzas públicas, existen razones de interés nacional que justifican su expedición en forma inmediata;

En uso de las facultades conferidas por el inciso 19) del Artículo 118° de la Constitución Política del Perú;

Con el voto aprobatorio del Consejo de Ministros; y,

Con cargo de dar cuenta al Congreso de la República;

DECRETA:

**Artículo 1°.- Alcances del Decreto de Urgencia N° 077-2000**

Mediante Resolución del Ministro de Economía y Finanzas se podrán incluir dentro de los alcances del Artículo 1° del Decreto de Urgencia N° 077-2000, a otras carteras de crédito que hayan sido transferidas al Ministerio de Economía y Finanzas.

**Artículo 2°.- Normas Complementarias**

Por Resolución Ministerial de Economía y Finanzas se podrán dictar las normas complementarias que fueren necesarias para la mejor aplicación de este dispositivo legal.

**Artículo 3°.- Refrendo**

El presente Decreto de Urgencia es refrendado por el Presidente del Consejo de Ministros y por el Ministro de Economía y Finanzas.

Dado en la Casa de Gobierno, en Lima, a los veinte días del mes de abril del año dos mil uno.

VALENTIN PANIAGUA CORAZAO
Presidente Constitucional de la República

JAVIER SILVA RUETE
Ministro de Economía y Finanzas y
Encargado de la Presidencia del
Consejo de Ministros

22251

---

**PCM**

**Facultan a la Defensoría del Pueblo efectuar el proceso de reestructuración organizativa institucional**

**DECRETO SUPREMO
N° 041-2001-PCM**

Lima, 21 de abril de 2001.

EL PRESIDENTE DE LA REPÚBLICA

CONSIDERANDO:

Que, de conformidad con los Artículos 161° y 162° de la Constitución Política del Perú, se aprobó la Ley N° 26520, Ley Orgánica de la Defensoría del Pueblo;

Que, conforme a lo dispuesto por la Primera Disposición Final de la Ley N° 27427, las Entidades del Sector Público que estimen conveniente podrán llevar a cabo un proceso de reestructuración organizativa institucional dentro de un plazo que no exceda de sesenta días calendario contados a partir de la entrada en vigencia de esta ley;

Que, la Defensoría del Pueblo al amparo de la disposición citada en el considerando anterior, ha decidido efectuar un proceso de reestructuración organizativa institucional, mediante la modificación o sustitución de sus instrumentos de gestión institucional, conforme a los procedimientos y formalidades establecidas por la citada Ley, dentro de los límites presupuestales asignados para dicho organismo en el presente año fiscal;

De conformidad con lo establecido en el inciso 8) del Artículo 118° de la Constitución Política del Perú, el Decreto Legislativo N° 560, Ley del Poder Ejecutivo, la Ley N° 27427, de Racionalidad y Límites en el Gasto Público para el Año Fiscal 2001;

DECRETA:

**Artículo 1°.- Facúltese a la Defensoría del Pueblo a efectuar las acciones de personal que conlleve el proceso de reestructuración organizativa institucional a que se refiere la Primera Disposición Final de la Ley N° 27427, tendientes a implementar su Cuadro para Asignación de Personal (CAP) dentro de los límites de ingresos establecidos en el presente año fiscal, con observancia de lo dispuesto por la citada norma legal y sus modificatorias.

**Artículo 2°.- El presente Decreto Supremo será refrendado por el Presidente del Consejo de Ministros.

Dado en la Casa de Gobierno, en Lima, a los veintiún días del mes de abril del año dos mil uno.

VALENTIN PANIAGUA CORAZAO
Presidente Constitucional de la República

JAVIER SILVA RUETE
Ministro de Economía y Finanzas y
Encargado de la Presidencia del Consejo de Ministros

22267

# SECRET

**Special High Level Committee of the Department of Homeland Security for delivery of the financial reward for the arrest of Vladimiro Lenin Montesinos Torres**

*Agreement No. 1*

Case No. 03-2001

Lima, August 5, 2002

[Seal, right margin, second paragraph:]
DEPARTMENT OF HOMELAND SECURITY
/s/ Illegible
Interested Party
GENERAL SECRETARIAT

**WHEREAS:**

On June 23, 2001 Venezuelan national José Guevara provided information leading to the location and capture of Vladimiro Lenin Montesinos Torres to the Chair of the Special High Level Committee of the Department of Homeland Security at the time, PNP Lieutenant General Antonio Ketin Vidal Herrera for the purpose of receiving the financial reward stipulated in Emergency Decree No. 049-2001:

Mr. José Guevara made his request by and through his attorney, set forth in briefs sent to this Committee on February 6 and 19, 2002;

The request made by Mr. José Guevara is in keeping with the procedure stipulated in Emergency Decree No. 049-2001, issued on April 16, 2001;

The Special High Level Committee of the Department of Homeland Security must decide the request made by Mr. Jos é Guevara base on the analysis of the facts set forth in his request;

**DECIDES:**

To authorize processing of the request filed by Mr. José Guevara for evaluation by the Special High Level Committee of the Department of Homeland Security.

/s/ Illegible
**GINO COSTA SANTOLALLA**
Secretary, Department o f Homeland Security

/s/ Illegible
**CARLOS BASOMBRIO IGLESIAS**
Undersecretary, Department of Homeland Security

/s/ Illegible
**JOSE MANUEL TISOC LINDLEY**
Director General, Peruvian National Police

/s/ Illegible
**JUAN ZARATE GAMBINI**
Director General of Intelligence, Department of Homeland Security

# SECRET


PLAINTIFF'S EXHIBIT
B

THIS IS A TRUE AND ACCURATE COPY OF THE
ORIGINAL KEPT BY THE SPECIAL HIGH LEVEL
COMMITTEE OF THE DEPARTMENT OF
HOMELAND SECURITY FOR DELIVERY OF THE
FINANCIAL REWARD FOR THE ARREST OF
VLADIMIRO LENIN MONTESINOS TORRES.

[Seal:]
DEPARTMENT OF HOMELAND SECURITY
/s/ Illegible
Interested Party
GENERAL SECRETARIAT

**Lima, 22 JAN 2003**
**A TRUE COPY OF THE ORIGINAL**
/s/ Illegible
MARTIN SOLARI DE LA FUENTE
PNP MED GENERAL
Secretary General, Department o f Homeland Security

## CERTIFICATE OF ACCURACY

I, **Esther Cecilia Crespo**, an interpreter certified by the Administrative Office of the United States Courts, for and on behalf of **Liaison Services, Inc.**, hereby certify that the foregoing translation, attached hereto and consisting of _2_ page(s), is a true and accurate translation of the original document.

Esther Cecilia Crespo
U.S. Court Interpreter • Translator

SECRETO

Comisión Especial de Alto Nivel del Ministerio del Interior
para la entrega de la compensación económica por la
captura de Vladimiro Lenin Montesinos Torres

*Acuerdo N° 01*

Expediente N° 03-2001

Lima, 5 de agosto de 2002

**VISTOS Y CONSIDERANDOS:**

Que, el 23 de junio de 2001, el ciudadano venezolano José Guevara brindó al Presidente de la Comisión Especial de Alto Nivel del Ministerio del Interior de aquel entonces, Teniente General PNP Antonio Ketín Vidal Herrera, información tendiente a la ubicación y captura de Vladimiro Lenin Montesinos Torres, con la finalidad de acceder a la compensación económica prevista en el Decreto de Urgencia N° 049-2001;

Que, el pedido del señor José Guevara fue reiterado a través de su abogado mediante escritos enviados a esta Comisión el 6 y el 19 de febrero de 2002;

Que, la solicitud planteada por el señor José Guevara se enmarca dentro del procedimiento previsto por el Decreto de Urgencia N° 049-2001, emitido el 16 de abril de 2001;

Que, la Comisión Especial de Alto Nivel del Ministerio del Interior deberá resolver el pedido del señor José Guevara a partir del análisis de los hechos planteados en su solicitud;

**SE RESUELVE:**

Admitir a trámite la solicitud formulada por el señor Josée Guevara, a fin de ser evaluada por la Comisión Especial de Alto Nivel del Ministerio del Interior.

Regístrese y comuníquese al interesado.


**GINO COSTA SANTOLALLA**
Ministro del Interior

**CARLOS BASOMBRIO IGLESIAS**
Viceministro del Interior

**JOSE MANUEL TISOC LINDLEY**
Director General de la
Policía Nacional del Perú

**JUAN ZARATE GAMBINI**
Director General de Inteligencia del
Ministerio del Interior



SECRETO

ES COPIA FIEL DE SU ORIGINAL  QUE OBRA EN LA COMISIÓN DE
ALTO NIVEL DEL MINISTERIO DEL INTERIOR PARA LA ENTREGA DE
LA COMPENSACIÓN ECONÓMICA POR LA CAPTURA DE VLADIMIRO
LENIN MONTESINOS TORRES.

Lima, **2 2 ENE. 2003**
**ES COPIA FIEL DEL ORIGINAL**

MARTIN SOLARI DE LA FUENTE
GENERAL MED. PNP
Secretario General del Ministerio
del Interior

Vladimiro Lenin Montesi res



# República del Perú
# MINISTERIO DEL INTERIOR

SPANISH

REWARD

INSTRUCTIONS

PERSONAL INFO

REQUISITORIES

WHO IS HE?

CHRONOLOGY

COLLABORATE

DIFFERENT FACES

LINKS

## IMPORTANCES AND MECHANISMS TO RECEIVE INFORMATION AND GIVE THE REWARD

● THE SUPREME GOVERNMENT HAS PROMULGATED THE EMERGENT OFFICIAL ORDER N° 049-2001 IN WHICH IT ESTABLISH THE ECONOMIC REWARD FOR TRUE INFORMATION THAT LETS THE LOCATION AND CAPTURE OF VLADIMIRO MONTESINOS.

● A HIGH LEVEL COMISSION WILL BE FORMED TO EVALUATE THE INFORMATION GOTTEN AND GIVE THE REWWARD.

● THE BASIC CONDITION IS TO GIVE TRUE INFORMATION TO MAKE POSSIBLE THE LOCATION AND CAPTURE OF VLADIMIRO MONTESINOS TORRES.

● ONE OR ALL THE INFORMANTS COULD USE PSEUDONYM.IN THIS CASE A SECRET CODE WILL BE ASSIGNED FOR FUTURE IDENTIFICATION

● SPECIAL MECHANISMS WILL BE ESTABLISED FOR THE SECURITY FOR THE INFORMANT AND HIS FAMILY.

● THE REWARD AND SECURITY WILL BE NATIONAL OR INTERNATIONAL.

● THE FUNDS FOR THE REWARD ARE GIVEN BY THE MEF.

● THE INFORMATION COULD BE FORMULATED THROUGH INTERNET, FAX AND TELEPHONE LINES SPECIALLY ASSIGNED.

**PLAINTIFF'S EXHIBIT**
C

8/22/2003

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET



The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

NIGHT BOX
FILED

JOSE GUEVARA

DEC 2 2004

CLARENCE MADDOX
CLERK USDC / SDFL / MIA

**DEFENDANTS**   CIV-COOKE
REPUBLIC DEL PERU; MINISTERIO DEL INTERIOR / McALILEY
DEL PERU; ANTONIO KETIN VIDAL, individually
and FERNANDO ROSPIGLIOSI, individually

Docket: CV CV 23223 Cooke/McAliley

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   N/A
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Arturo Martinez, Esq.      (305) 375-9220
100 Southeast 2nd Street, Suite 3400, Miami, FL 33131

ATTORNEYS (IF KNOWN)
William F. Sutton, Jr., Esq.      (407) 244-8000
111 N. Orange Ave., Suite 1750, Orlando, FL 32801

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: (DADE)  MONROE,  BROWARD,  PALM BEACH,  MARTIN,  ST. LUCIE,  INDIAN RIVER,  OKEECHOBEE  HIGHLANDS

| II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY) | III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) |
|---|---|

(For Diversity Cases Only)

| | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State  ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State  ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| | | Citizen or Subject of a  ☐ 3 Foreign Country | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN**    (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding ☒ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT**    (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | A PROPERTY RIGHTS | B☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | B☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | B☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | | ☐ 371 Truth in Lending | B☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | A LABOR | B SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| X☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| A REAL PROPERTY | A CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | HABEAS CORPUS: | | FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | ☐ 790 Other Labor Litigation | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | | A☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | | A OR B |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | |
| | | B☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Breach of Contract against Foreign Sovereign removed from state court under 28 U.S.C. Statute 1441(a).

LENGTH OF TRIAL
via _7_ days estimated (for both sides to try entire case)

| VII. REQUESTED IN COMPLAINT: | CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23 | DEMAND $5,000,000.00 | CHECK YES only if demanded in complaint: JURY DEMAND: ☒ YES ☐ NO |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY** (See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE
December 21, 2004

SIGNATURE OF ATTORNEY OF RECORD
_William F. Sutton_

**FOR OFFICE USE ONLY**

RECEIPT # 913031    AMOUNT 150    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____