UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 04-23223-CIV-COOKE/BANDSTRA

JOSE GUEVARA,

    *Plaintiff*,

v.

REPUBLICA DEL PERU, *et al.*,

    *Defendants*.

_____/

**ORDER DENYING DEFENDANTS ANTONIO KETIN VIDAL'S
AND FERNANDO ROSPIGLIOSI'S MOTION TO DISMISS
THE COMPLAINT FOR LACK OF JURISDICTION**

The individual defendants, Antonio Ketin Vidal and Fernando Rospigliosi, have moved to dismiss counts IV and V of the Complaint for lack of personal jurisdiction. To the extent that these defendants have been sued in their individual capacities, the motion to dismiss is granted.

### I. BACKGROUND

This is a lawsuit arising under the Foreign Sovereign Immunities Act ("FSIA") commercial activity exception to sovereign immunity. Plaintiff Jose Guevara seeks to collect a $5,000,000.00 reward offered by Defendant Republica del Peru ("Peru") in exchange for information leading to the capture and arrest of an international fugitive, Vladimiro Lenin Montesinos Torres ("Montesinos"). Guevara alleges that he accepted the reward by providing Peru with accurate information and assistance that led to the location and capture of Montesinos under the terms of Peru's offer. Guevara, however, was never paid the reward.

In addition to suing the Republic of Peru, Guevara also sued Antonio Ketin Vidal ("Ketin

Vidal") and Fernando Rospigliosi ("Rospigliosi"), both former ministers of Peru. Ketin Vidal and Rospigliosi have moved to dismiss the Complaint on the basis that they are immune from the jurisdiction of the United States under the Foreign Sovereign Immunities Act ("FSIA") and the Due Process Clause of the United States Constitution. The following allegations are taken from the Complaint.

On April 22, 2001, the Republic of Peru offered a reward for accurate information that would directly enable locating and capturing Montesinos. Montesinos was arrested in Venezuela on June 23, 2001. Ketin Vidal and Rospigliosi served as Ministers of Interior of Peru and headed a High Level Special Committee of the Ministry of Interior ("Special Committee") during the time relevant to the Complaint. At an unspecified time and place after Guevara's arrest, Ketin Vidal and others allegedly met with Guevara at the FBI's field division office in North Miami Beach, Florida. During the meeting, Ketin Vidal allegedly thanked Guevara for providing information and assistance that enabled the location and capture of Montesinos, and allegedly reaffirmed Peru's commitment to pay the reward in Miami, Florida.

On February 22, 2002, the Ministry was headed by Rospigliosi who succeeded Ketin Vidal as the Minister of Interior. At this time, Guevara allegedly met in Miami with a Peruvian lawyer, Dr. Jose Ugaz, and a Peruvian judge, Dra. Magali Bascones, who allegedly delivered to Guevara a promise from Rospigliosi that the reward would be paid to Guevara if he cooperated with them. In reliance on the promise, Guevara allegedly provided information he acquired while head of Montesinos's security. Based on these allegations, the Complaint asserts a cause of action against Ketin Vidal for fraudulent inducement and against Rospigliosi for fraudulent misrepresentation.

## II.  LEGAL STANDARD

### A.  *Motion to Dismiss for Lack of Subject Matter Jurisdiction – Fed. R. Civ. P. 12(b)(1)*

A district court is powerless to hear a matter where subject matter jurisdiction is lacking. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974-75 (11th Cir. 2005) (noting that lower federal courts are courts of limited jurisdiction)(citing to *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999)).  A plaintiff bears the burden of establishing subject matter jurisdiction. *Sweet Pea Marine, Ltd., v. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n.2 (11th Cir. 2005).  A defendant bringing a motion to dismiss under Fed. R. Civ. P. 12(b)(1), may assert a "facial attack" to jurisdiction whereupon the court will look to the complaint to determine whether the plaintiff has sufficiently alleged subject matter jurisdiction. *Lawrence v. Dumbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion – the court must consider the allegations of the complaint to be true." *Id.* at 1529.  A defendant may also bring a "factual attack" challenging "the existence of subject matter jurisdiction in fact, irrespective of the pleadings . . . ." *Id.* (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980), cert. denied, 449 U.S. 953 (1980)).  In contrast to a facial attack, when a factual attack is brought, "the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56[,]" by examining and weighing evidence related to the court's subject matter jurisdiction – its authority to hear the case – and giving no presumptiveness of truth to the plaintiff's allegations. *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.) (1981), cert. denied, 454 U.S. 897 (1981)).

### B.  *Motion to Dismiss for Lack of Personal Jurisdiction – Fed. R. Civ. P. 12(b)(2)*

"When the district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a prima facie case of personal

jurisdiction over the nonresident defendant." *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990) (citing *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988) and *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988)). A plaintiff establishes a prima facie case by presenting sufficient evidence to defeat a motion for directed verdict. *Id.* "The district court must accept the facts alleged in the complaint as true, to the extent that they are uncontroverted by the defendant's affidavits." *Id.*

Personal jurisdiction determinations consist of a two-part inquiry. *Id.* First, courts must look at the applicable long-arm statute. *Id.* "Since the extent of the long-arm statute is governed by Florida law, 'federal courts are required to construe it as would the Florida Supreme Court.'" *Id.* at 856. If the facts satisfy the state's long-arm statute, the court must decide whether there are sufficient minimum contacts between Florida and the nonresident defendant to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 855.

### III.  DISCUSSION

Only two counts of the Complaint assert causes of action against the former ministers. Count IV asserts a fraudulent inducement claim against Ketin Vidal and Count V asserts a fraudulent misrepresentation claim against Rospigliosi. As these counts are asserted only against the former ministers in their individual capacities, and not against Peru, the Foreign Sovereign Immunities Act does not apply to these counts.

#### A.  *Subject Matter Jurisdiction*

Since Ketin Vidal and Rospigliosi were only sued in their individual capacities, the FSIA does not bar a suit against them. Even if they had been sued in their official capacities for engaging in actions within the scope of their authority, the FSIA would not have barred a suit against them

since they would not have been entitled to sovereign immunity as the sovereign itself is not. *Guevara v. Republic of Peru*, 468 F.3d 1289, 1305 (11th Cir. 2006).

### B.     *Personal Jurisdiction*

I am not dismissing Counts IV and V of the Complaint as I have personal jurisdiction over Ketin Vidal and Rospigliosi. The former ministers argue in their motion that exercising jurisdiction over them would violate due process. Under *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993), where a suit is based on specific jurisdiction, this issue is examined through the following three-pronged test:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contact must involve "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws. Third, the defendant's contacts with the forum must be "such that [the defendant] should reasonably anticipate being haled into court there."

*Id.*

Ketin Vidal's and Rospigliosi's contacts with Florida are sufficient to establish constitutionally-required minimum contacts. The Complaint alleges that Ketin Vidal, through F.B.I. Agent Waldo Longa, offered the reward to Guevara while Guevara was in Miami, Florida. Ketin Vidal was in Peru at that time. On June 23, 2001, Montesinos was captured. Thereafter, in July 2001, Ketin Vidal traveled to Miami and requested a meeting with Guevara. The meeting took place on July 10, 2001 at the F.B.I's Field Division Office in North Miami Beach. During the meeting, Ketin Vidal allegedly acknowledged that Guevara provided the information and assistance that enabled the location and capture of Montesinos. The Complaint further alleges that, at the meeting, Ketin Vidal reaffirmed Peru's commitment to pay Guevara the reward in Miami. With respect to Rospigliosi, the Complaint alleges that, after Guevara had already provided the information

necessary to locate and capture Montesinos, Rospligliosi sent Guevara a message through two Peruvian officials. In his message, Rospigliosi allegedly promised that Guevara would be paid the reward. The contacts alleged are enough to bring the former ministers within the jurisdiction of this court.

The three prongs of the *Vermeulen* test are satisfied by the uncontroverted allegations of the Complaint. Both ministers contacts are related to the causes of action asserted against them. Guevara sued Ketin Vidal for fraudulent inducement based on Ketin Vidal offering him the reward and then traveling to Florida to reaffirm to Guevara Peru's commitment to pay the reward in Miami so as to obtain information and his cooperation. Guevara sued Rospigliosi for fraudulent misrepresentation based on Rospigliosi's promise, which was communicated to Guevara in Miami, that Guevara would be paid the reward.

Moreover, the former ministers' contacts were not random, fortuitous, or attenuated and were not the result of a third party's unilateral activity. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (11th Cir. 1985) (explaining that, to satisfy the minimum contacts requirement, defendants contacts with the jurisdiction must not be random, fortuitous, or attenuated, or the result of the unilateral activity of another party). Both Ketin Vidal and Rospigliosi initiated their contacts with the forum by communicating messages to Guevara while he was in Miami. Ketin Vidal's message to Guevara was communicated to Guevara by an F.B.I. Agent located in Miami. The contacts with Florida were also deliberate. For example, Ketin Vidal visited Florida to meet with Guevara in the F.B.I.'s Field Division Office in North Miami Beach and to reassure him that he would be paid the reward. Guevara's factual allegations support a finding that the former ministers purposefully availed themselves of the benefits of conducting activities in Florida. Even a single contact can support jurisdiction as long as it creates a "substantial connection" with the forum. *Id.* at 476 n.18.

Lastly, the former ministers should have anticipated being haled into court in Florida given that they were defrauding a Florida resident who, at the time of communication, was physically present in Florida. The Supreme Court has previously held that defendants whose intentional actions are expressly aimed at a particular forum can reasonably anticipate being haled into court in that forum. *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984). In *Calder v. Jones*, a California plaintiff sued a Florida newspaper and two of its employees in California state court based on an allegedly libelous article about the plaintiff. *Id.* at 790. In affirming jurisdiction, the Court noted that the out of state employees' article was an "intentional and allegedly tortious act" aimed at plaintiff in the forum state because the defendants knew their article would have a negative impact on the California plaintiff. *Id.* at 789-90. The court found that California was the focal point of the tort and jurisdiction was proper there based on the "effects" in California of defendants' Florida conduct. *Id.* at 789. Therefore, if Ketin Vidal and Rospigliosi defrauded Guevara in Florida, Guevara should be able to sue them in Florida. In *Calder*, the Supreme Court concluded that "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." *Id.* at 790.

Intentional torts are acts that create a substantial connection with the forum and may support the exercise of personal jurisdiction even where the defendants have no other contacts with the forum. In *Licciardello v. Lovelady*, No. 07-14086, 2008 WL 4531668, at *3 (11th Cir. Oct. 10, 2008), an out of state defendant was sued in Florida for trademark infringement. The defendant was alleged to have used the plaintiff's trademarked name and his picture on a website. The defendant's only contact related to the cause of action was the posting of that website on the internet, which was accessible to the public in Florida. The Court noted that many courts have employed the *Calder* "effects" test when the plaintiff's claim involves an intentional tort. *Id.* at *4. The *Calder*

test requires that the tort be intentional, aimed at the forum state, and cause harm that the defendant should have anticipated would be suffered in the forum state. Circuit courts of appeal have recognized that "the defendant's connection with the forum in an intentional tort case should be evaluated under the *Calder* 'effects' test, rather than the contracts-originated 'minimum contacts' test." *Id.* The *Lovelady* Court went on to conclude that the unauthorized use of plaintiff's mark was an intentional tort that individually targeted plaintiff to misappropriate his name and reputation for commercial gain. *Id.* Accordingly, the *Calder* effects test was satisfied and the defendant could not claim surprise at being haled into court in Florida. Similarly, the allegations here satsify the *Calder* "effects" test. Ketin Vidal and Rospigliosi are alleged to have made fraudulent representations to Guevara who they knew was in Florida.

Florida courts have asserted personal jurisdiction over out of state defendants under similar facts as the ones present in this case. In *Machtinger v. Inertial Airline Serv.*, 937 So. 2d 730 (Fla. 3d DCA 2006), an out of state defendant was sued for sending fraudulent invoices to a company in Florida. The defendant moved to dismiss based on lack of personal jurisdiction. The court denied the motion finding that the defendant's fraudulent misrepresentations via phone calls, faxes and letters to officials of the company located in Florida were sufficient to support long-arm jurisdiction. *Id.* at 735. With respect to minimum contacts, the court stated that, by committing a fraud in Florida, defendants "could reasonably anticipate being haled into a Florida court to answer for misrepresentation it made to a Florida resident to induce that resident to act." *Id.* at 736 (citing *Fletcher Jones West Shara. Ltd. v. Rotta*, 919 So. 2d 685, 687 (Fla. 3d DCA 2006).

In cases where plaintiffs allege that a tort was committed in Florida, courts routinely find that the commission of the tort is sufficient to establish the necessary minimum contacts to assert personal jurisdiction. In *Krilich v. Wolcott*, 717 So. 2d 582, 583 (Fla. 4th DCA 1998), the

representatives of a Texas company fraudulently misrepresented the value of certain Federal Home Loan Participation Certificates to the plaintiff, inducing the plaintiff to pay $95 million dollars for the certificates when they were only worth several thousand dollars. The only contacts the representatives had with Florida were a meeting with the plaintiff in Fort Lauderdale during which they discussed the sale of the certificates. *Id.* The representatives stated that all representations regarding the value of the certificates were made prior to the Florida visit. *Id.* The sale of the certificates was also completed prior to the visit. *Id.* The court reversed the dismissal of the complaint based on lack of personal jurisdiction, stating: "The commission of a tort in Florida is sufficient to establish minimum contacts and satisfy federal due process concerns." *Id.* The court went on to explain that, by committing an intentional tort within the state, the representatives were purposefully availing themselves of the state and should reasonably expect to be haled into court here. *Id.* at 584. The court further noted that, under the circumstances of the case, Florida has an interest in adjudicating the dispute to protect its citizens from nonresidents who enter the state and engage in tortious conduct. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

For purposes of specific personal jurisdiction, the allegations of the Complaint are sufficient to bring Ketin Vidal and Rospigliosi within the jurisdiction of this court.

### IV. CONCLUSION

Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction [D.E. 87] is denied. Although I find that I can assert personal jurisdiction over the former ministers, I am not certain that they were acting outside the scope of their authority. Defendants Ketin Vidal and Rospigliosi shall file a motion for summary judgment by October 24, 2008 briefing the issue of whether the former ministers were acting outside the scope of their authority and, if not, whether summary judgment should be granted in their favor. Guevara shall file a response by October 28,

2008.  No extensions of these deadlines will be granted due to the upcoming trial.  A courtesy copy of the motion and the response shall be delivered to chambers.

**DONE AND ORDERED** in Miami, Florida, this 21st day of October 2008.

_____
MARCIA G. COOKE
United States District Judge

cc:

All counsel of record